UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

NEUROGRAFIX, a California corporation; NEUROGRAPHY INSTITUTE MEDICAL ASSOCIATES, INC., a California corporation; and IMAGE-BASED SURGICENTER CORPORATION, a California corporation,

Plaintiffs,

vs.

BETH ISRAEL DEACONESS MEDICAL CENTER, INC., a Massachusetts corporation; HARVARD MEDICAL FACULTY PHYSICIANS AT BETH ISRAEL DEACONESS MEDICAL CENTER, INC., a Massachusetts corporation; BETH ISRAEL DEACONESS PHYSICIANS ORGANIZATION, INC., a Massachusetts corporation; CAREGROUP, INC., a Massachusetts corporation; BETH ISRAEL DEACONESS MEDICAL CENTER AND CHILDREN'S HOSPITAL MEDICAL CARE CORPORATION, a Massachusetts corporation; and PRESIDENT AND FELLOWS OF HARVARD COLLEGE, a Massachusetts corporation,

Defendants.

Civil Action No. 1:12-cv-11274-RGS

**PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS BY DEFENDANT HARVARD MEDICAL FACULTY PHYSICIANS AT BETH ISRAEL DEACONESS MEDICAL CENTER, INC.**

Plaintiffs NeuroGrafix, Neurography Institute Medical Associates, Inc. ("NIMA"), and Image-Based Surgicenter Corporation ("IBSC") (collectively, "Plaintiffs") file this opposition to the Motion to Dismiss filed by Defendant Harvard Medical Faculty Physicians at Beth Israel Deaconess Medical Center, Inc. ("Defendant").

## I. INTRODUCTION.

The Amended Complaint should not be dismissed because Plaintiffs have standing to bring this patent infringement action and have adequately pled direct infringement allegations against Defendant.

With respect to Defendant's standing arguments, the agreements provided to Defendant establish that Plaintiffs have standing to bring this lawsuit. Plaintiffs have prudential standing because Plaintiffs received all substantial rights to the patent-in-suit, notwithstanding the retention of some contractual rights by other parties. Further, Plaintiffs have constitutional standing to assert all aspects of their infringement claim against Defendant because the intent of the parties to exclusively license all rights to the United States Patent No. 5,560,360 (the "'360 Patent"), including the right to offer to sell and import, is clear from the face of the assignments. The fact that the licenses do not expressly refer to the right to offer to sell and import ignores the clear scope and intent of the agreement. Similarly, the Amended Complaint should not be dismissed for lack of constitutional standing in NIMA's and IBSC's fields of use because Plaintiffs NIMA and IBSC have constitutional standing in these fields, and their participation in this action is permitted under the relevant agreements. Notably, another federal district court has recently specifically found to this effect, ruling that the contracts among Plaintiffs should be interpreted consistently with "the contracting parties' agreed interpretation" that the licenses conferred NeuroGrafix, NIMA, and IBSC exclusionary rights and standing to sue.See*NeuroGrafix v. Regents of the Univ. of Cal.*, 2012 U.S. Dist. LEXIS 15170 (C.D. Cal. Jan. 4, 2012).

The Amended Complaint also adequately states a claim for relief. Defendant's argument that the Amended Complaint does not adequately state a claim for joint infringement must be

rejected because the Amended Complaint does not at this time make a claim for joint infringement. The Amended Complaint does, however, satisfy the pleading requirements of Form 18, as required by the Federal Circuit.

For these reasons, as fully detailed below, Defendant's Motion should be rejected.

## II. PLAINTIFFS HAVE PRUDENTIAL AND CONSTITUTIONAL STANDING.

### A. The Amended Complaint Should Not Be Dismissed Under Rule 12(b)(1) And 12(b)(7) Because Plaintiffs Have Prudential Standing.

Plaintiffs have prudential standing to sue for infringement of the '360 Patent because NeuroGrafix received all substantial rights to the '360 Patent from Washington Research Foundation ("WRF") no later than June 15, 2012, prior to the filing of the instant action, pursuant to an Amended and Restated Non-Terminable Exclusive License Agreement ("Amended Agreement"). Ex. M.[1]Previously, WRF had received all substantial rights to the '360 Patent from the University of Washington, the owner of the '360 Patent by assignment from inventors Aaron G. Filler, Jay S. Tsuruda, Todd L. Richards, and Franklyn A. Howe.

Pursuant to one agreement between NeuroGrafix and NIMA and another agreement between NIMA and IBSC, Plaintiffs divided the exclusive rights granted to NeuroGrafix under the '360 Patent into separate exclusive fields of use. As previously determined by the Central District of California, these agreements rendered each of the three Plaintiffs an exclusive licensee of the '360 Patent in their respective fields of use with constitutional standing to sue for infringement thereof. *NeuroGrafix v. Regents of the Univ. of Cal.*, 2012 U.S. Dist. LEXIS 15170 (C.D. Cal. Jan. 4, 2012).

---

[1] References to exhibit numbers herein refer to the exhibits to the Declaration of David E. Cole submitted in support of Defendant's Motion to Dismiss.

**1. The Amended Agreement Grants All Substantial Rights Under The '360 Patent To NeuroGrafix, Thereby Conferring Prudential Standing To Sue.**

The central legal issue raised by Defendant's Motion to Dismiss is whether Plaintiffs have prudential standing to sue for infringement of the '360 Patent – that is, the ability to sue in their own names without joining any additional parties as plaintiffs. The purpose of the prudential standing doctrine is to "avoid[] the potential for multiple litigations and multiple liabilities and recoveries against the same alleged infringer." *Morrow v. Microsoft Corp.,* 499 F.3d 1332, 1340 (Fed. Cir. 2007). The prudential standing requirement can be met in two alternative ways, either by holding all exclusionary rights under the patent, *or* by holding all substantial rights to the patent. *Id*. at 1340 ("When a party holds all rights or all substantial rights, it alone has standing to sue for infringement.").

Defendant argues that the Amended Agreement does not grant all exclusionary rights under 35 U.S.C. § 271(a), namely, the rights to offer for sale and to import the patented invention. As addressed below, this is an incorrect interpretation of the Agreement. However, even assuming, *arguendo*, that this contention is correct and Plaintiffs do not hold all exclusionary rights to the '360 Patent, this has no bearing on the question of whether Plaintiffs meet the prudential standing requirement because Plaintiffs hold all substantial rights to the '360 Patent. *Id*. at 1340. Specifically, courts have noted that the absence of rights to offer for sale and to import the patented invention does not preclude a finding that all substantial rights were transferred to a plaintiff. *Dexas Int'l, Ltd. v. Tung Yung Int'l (USA) Inc.*, 2009 U.S. Dist. LEXIS 34766, 22-23 (E.D. Tex. Feb. 25, 2009), citing *Aspex Eyewear, Inc. v. Miracle Optics, Inc.*, 434 F.3d 1336, 1342 (Fed. Cir. 2006) ("The Federal Circuit has explicitly noted that the transfer of an exclusive right to make, use, and sell, coupled with the right to sue and sublicense, strongly favor

a finding of an assignment, ***even when the licensing agreement fails to transfer the right to import or offer for sale***”) (*emphasis added*).

Defendant admits that the Amended Agreement grants NeuroGrafix the exclusive rights to “make, use, and sell Licensed Products in the Territory.” Ex. M, § 2. Moreover, the Amended Agreement also provides that, “Licensee [NeuroGrafix] will have sole responsibility in dealing with any infringing Third Parties. Licensee shall have the sole right to grant a Sublicense to such Third Party, or to bring, at no expense to WRF, an infringement action against the Third Party … Licensee shall have full control over its conduct, choice of counsel and settlement thereof.” Ex. M, §§ 7.2 - 7.3. Thus, because NeuroGrafix received the exclusive rights to make, use, and sell the patented invention, the sole right to sue and control the conduct and settlement of infringement litigation, and the sole right to grant sublicenses, NeuroGrafix received all substantial rights under the ‘360 Patent pursuant to the Amended Agreement, notwithstanding any purported absence of a right to import or offer for sale. *Dexas*,2009 U.S. Dist. LEXIS 34766 at*22-23. Therefore, Plaintiffs do have prudential standing to sue for infringement of the ‘360 Patent in their own names, without joining WRF or any other individual or entity as a party. This is consistent with the purpose of the prudential standing doctrine, as WRF does not retain any right to sue Defendant for infringement of the ‘360 Patent under the Amended Agreement, so there is no possibility of “multiple litigations and multiple liabilities and recoveries against the same alleged infringer.” *Morrow*, 499 F.3d at 1340.

While an exclusive right to offer for sale is not necessary to confer prudential standing for the reasons explained above, Defendant’s argument that NeuroGrafix does not have the right to offer for sale under the Amended Agreement is also nonsensical as a matter of contract interpretation. While 35 U.S.C. § 271(a) does indeed proscribe both infringing offers for sale

and sales, thus creating liability even if an offer for sale does not result in an actual sale, the grant of an exclusive license to sell under the '360 Patent implicitly and necessarily includes the right to offer for sale as well, as any sale authorized pursuant to the license must necessarily be preceded by an offer to sell. Therefore, Defendant's reading is clearly incorrect as a matter of contract interpretation, and the Amended Agreement does grant to NeuroGrafix the right to offer to sell under the '360 Patent.

### 2. WRF's Retention Of Certain Contractual Rights In The Amended Agreement Does Not Negate A Finding That All Substantial Rights Under The '360 Patent Were Transferred To NeuroGrafix.

In support of their argument that NeuroGrafix did not receive all substantial rights to the '360 Patent under the Amended Agreement, Defendant points to WRF's right to receive 35% of the proceeds of any infringement action after NeuroGrafix recoups litigation expenses, and WRF's right to receive royalties, as purported substantial rights that were not transferred to NeuroGrafix. The "right of the licensor to receive a portion of the recovery in infringement suits brought by the licensee" is indeed one of many factors to be considered in performing an "all substantial rights" analysis for prudential standing purposes. *Alfred E. Mann Found. for Sci. Research v. Cochlear Corp.*, 604 F.3d 1354 (Fed. Cir. 2010). However, the Federal Circuit has held that the retention of such rights by a licensor does not preclude a finding that all substantial rights were nonetheless transferred. For example, in *Vaupel Textilmaschinen KG v. Meccanica Euro Italia S.P.A.*, 944 F.2d 870, 875 (Fed. Cir. 1991), the Federal Circuit considered a situation in which a licensor, *inter alia*, "retained … a right to receive infringement damages." After analyzing all the rights retained by the licensor, the Federal Circuit concluded, "none of these reserved rights was so substantial as to … indicate an intent not to transfer all substantial rights. … the right to receive infringement damages was merely a means of compensation under the

agreement." Furthermore, the Federal Circuit has stated that, "the nature and scope of the exclusive licensee's purported right to bring suit, together with the nature and scope of any right to sue purportedly retained by the licensor, is the most important consideration" in performing an "all substantial rights" analysis for prudential standing purposes. *Alfred E. Mann Found. for Sci. Research*, 604 F.3d 1354. Here, these factors indicate that Plaintiffs have prudential standing to sue.

The cases cited by Defendant are not to the contrary. In *Propat Int'l Corp. v. RPost US, Inc.*, 473 F.3d 1187, 1192 (Fed. Cir. 2007), the court's determination was based on at least the following facts: (1) the agreement did not grant "the right to make, use, and sell the patented invention" to the licensee; (2) licensor retained" the right to seek new patents on the underlying invention and therefore … an implicit right to use the invention"; (3) the agreement provided that licensor was responsible to maintain the patents; (4) licensor retained the right to veto licensing and litigation decisions made by licensee; (5) licensor had the right to prevent licensee from transferring its interest in the patent to a third party; and (6) licensor had the right to terminate the agreement if licensee failed to meet certain specified benchmarks in its efforts to exploit the patent. *Id*. at 1190-1192. None of these additional facts are present here: (1)the Amended Agreement expressly grants NeuroGrafix the right to make, use, and sell the invention of the '360 Patent (Ex. M, § 2); (2) the Amended Agreement does not provide that WRF retains the right to seek new patents on the underlying invention or an implicit right to use the invention; (3) the Amended Agreement provides that NeuroGrafix, not WRF, is responsible for maintaining the patents (*id.*, §§ 6.1-6.2); (4) the Amended Agreement does not provide WRF with any right to veto licensing and litigation decisions made by NeuroGrafix (*id.*, §§ 7.2 - 7.3); (5) the Amended Agreement does not provide WRF with any right to prevent NeuroGrafix from transferring its

interest in the patent to a third party (*id.*,, § 17.1); and (6) the Amended Agreement does not provide WRF with any right to terminate NeuroGrafix's rights in the '360 Patent granted therein, which is expressly "non-terminable" (*id.*, § 2). In the absence of any of these additional facts underlying the holding in *Propat*, a decision on the instant Motion to Dismiss should heed the following admonition stated by the *Propat* court itself: "To be sure, the fact that a patent owner has retained a right to a portion of the proceeds of the commercial exploitation of the patent, as Authentix has done in this case, does not necessarily defeat what would otherwise be a transfer of all substantial rights in the patent." *Propat*,473 F.3d at 1191.

Similarly, in *E8 Pharms. LLC v. Affymetrix, Inc.*, 680 F. Supp. 2d 292 (D. Mass. 2010), the court's determination was based on at least the following facts: (1) licensor did not grant licensee a right to practice the patented invention; (2) licensor retained the right to demand termination of any sublicense if a sublicensee brought a patent challenge; (3) licensee must consult with and consider the views of licensor regarding the advisability of proposed infringement actions; (4) licensee must obtain licensor's written consent before settling any infringement action; and (5) licensee lacked the right to assign its interest in the patent without licensor's written consent. Again, none of these additional facts are present here. *See* Ex. M, §§ 2, 7.2 - 7.3, 17.1. Thus, the holding in *E8 Pharms* is also distinguishable from the facts of this case.

As explained above, under the Amended Agreement, NeuroGrafix received the sole right to sue and control the conduct and settlement of infringement litigation and the sole right to grant sublicenses, while WRF does not retain any right to sue for infringement of the '360 Patent, nor any right to control the conduct or settlement of any such suit. Thus, even though WRF retains rights to be paid out of proceeds generated by the '360 Patent, the transfer of the exclusive rights

to make, use, and sell under the ‘360 Patent and all rights to sue and sublicense under the ‘360 Patent to NeuroGrafix, without the retention of any such rights in favor of WRF, compels the conclusion that NeuroGrafix did receive all substantial rights under the ‘360 Patent pursuant to the Amended Agreement. Therefore, Plaintiffs have prudential standing to sue for infringement of the ‘360 Patent in their own names, without joining WRF or any other individual or entity as a party.

### 3. WRF Had All Substantial Rights To The ‘360 Patent When It Licensed Those Rights To NeuroGrafix.

Defendant alleges that the University of Washington, St. George’s Hospital Medical School, and the federal government retain certain interests in the ‘360 Patent. Regarding the University of Washington, the Exclusive Technology License between the University of Washington and WRF granted to WRF “an exclusive worldwide license to practice the Technology,” which indisputably includes the ‘360 Patent, and “the right to sublicense its rights [t]hereunder to Third Parties on such terms as WRF shall deem fit.” Ex. P, § 2.01. Thus, WRF clearly received all substantial rights to the ‘360 Patent from the University of Washington, the owner of the ‘360 Patent by assignment from inventors Aaron G. Filler, Jay S. Tsuruda, Todd L. Richards, and Franklyn A. Howe. Regarding St. George’s Hospital Medical School, all rights in the ‘360 Patent held by St. George’s Hospital Medical School were assigned to the University of Washington. Ex. J. Regarding the United States, it is difficult to prove a negative, but Defendant’s argument is simply false. Notably, Defendant’s allegations are utterly devoid of evidence that any of these parties have ever asserted rights to practice the ‘360 Patent, rights to sue for infringement of the ‘360 Patent, or any other rights that would negate the conclusion that WRF received all substantial rights to the ‘360 Patent pursuant to its agreement with the University of Washington. Defendant’s argument appears to assert that Plaintiffs must prove the

negative that no other parties have substantial interests in the '360 Patent at the pleading stage in order to survive the instant Motion to Dismiss, an argument which has no basis in law (nor is any authority for such a remarkable proposition cited).

Moreover, as noted above, the mere retention of *some* contractual rights by any of these entities would not negate the conclusion that WRF received all substantial rights under the '360 Patent for the purposes of a prudential standing analysis. *See, e.g., Dexas*, 2009 U.S. Dist. LEXIS 34766 ("[Licensor] did not explicitly retain any rights to practice the asserted patents, and the rights he did explicitly retain are rights that do not detract from the significant exclusionary rights held by Plaintiff, nor do they indicate an intent to transfer less than all substantial rights in the patents."). Defendant focuses, for example, on certain contractual restrictions on WRF's right to transfer its rights under its license. However, such restrictions on transfer have been held not to negate a finding that a licensee received all substantial rights to a patent. See *Vaupel*, 944 F.2d at 875("The sublicensing veto was a minor derogation from the grant of rights. It did not substantially interfere with the full use by Vaupel of the exclusive rights under the patent"). Should Defendant wish to attempt to prove its allegations regarding alleged third-party interests in the '360 Patent with the benefit of actual evidence obtained through further discovery during the course of this litigation, that is its prerogative, but such unsubstantiated allegations cannot be the basis for granting the instant Motion to Dismiss at the pleading stage.

### 4. In The Event Defendant's Motion To Dismiss Is Granted, Leave Must Be Granted To Amend The Complaint.

Federal Rule of Civil Procedure 15(a) declares that leave to amend "shall be freely given when justice so requires." The U.S. Supreme Court has held that leave to amend can only be denied when a specific reason exists, "such as undue delay, bad faith or dilatory motive on the

part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc." *Foman v. Davis*, 371 U.S. 178, 182 (U.S. 1962).With regards to undue delay, no leave to amend would be required unless Defendant's Motion to Dismiss, which is the subject of this Opposition, is granted, and if this were to occur, Plaintiffs would immediately seek to amend the Complaint accordingly. Thus, there can be no undue delay justifying denial of leave to amend in this case. With regards to bad faith or dilatory motive, the absence of WRF or any other individual or entity as a named plaintiff in this action is based on Plaintiffs' well-grounded belief that Plaintiffs possess both constitutional and prudential standing to sue for infringement of the '360 Patent in their own names, for the good-faith reasons fully explained elsewhere in this Opposition.

This belief has already been tested and affirmed by another federal district court. See *NeuroGrafix v. Regents of the Univ. of Cal.*, 2012 U.S. Dist. LEXIS 15170 (C.D. Cal. Jan. 4, 2012). Thus, even if this Court were to reach a different conclusion, there can be no finding of a bad faith or dilatory motive justifying denial of leave to amend in this case. With regards to repeated failure to cure deficiencies by amendments previously allowed, there have been no such previous deficiencies in this case. Indeed, despite Defendant's reference to previous litigation concerning the '360 Patent in their Motion to Dismiss, no previous court has ever ruled on the central issue presented by their motion in the instant action, namely, whether the Amended Agreement transferred all substantial rights to the '360 Patent to NeuroGrafix prior to the filing of the instant action, thereby conferring prudential standing to Plaintiffs (who collectively hold all the rights in the '360 Patent transferred to NeuroGrafix under the Amended Agreement, as explained above).With regards to undue prejudice, there would be none to Defendant, as the

instant action was only filed a few months ago and no discovery deadlines are imminent. Finally, with regards to futility, such an amendment would not be futile, as naming WRF as an additional plaintiff (while not necessary for the reasons explained elsewhere in this Opposition) would resolve any deficiency in prudential standing were the Court to grant Defendant's Motion to Dismiss.

### B. Plaintiffs Have Constitutional Standing With Regards To Infringing "Offers for Sale" And "Importation."

Defendant's argument that Plaintiffs do not have constitutional standing with regards to offers for sale because the Amended Agreement does not expressly grant NeuroGrafix the right to offer for sale is baseless because, as explained above, the exclusive right to sell necessarily includes the exclusive right to offer for sale. Furthermore, Defendant's argument also ignores the fact that WRF did not expressly retain the right to exclude others from offering to sell or importing under the Amended Agreement either. Under both Washington and Massachusetts law, the primary rule of contract interpretation is to give effect to the intent of the parties. *King County v. Merrill Lynch & Co.*, 2012 U.S. Dist. LEXIS 87734 (W.D. Wash. June 25, 2012) ("Under Washington law, '[t]he touchstone of contract interpretation is the parties' intent.'"); *Kingstown Corp. v. Black Cat Cranberry Corp.*, 839 N.E.2d 333, 336 (Mass. App. Ct. 2005) ("an agreement is to be 'construed so as to give it effect as a rational business instrument and in a manner which will effectuate the intent of the parties'"); *NeuroGrafix v. Regents of the Univ. of Cal.*, 2012 U.S. Dist. LEXIS 15170 at *2-5 (C.D. Cal. Jan. 4, 2012)("a court looks to the outward expressions of an agreement to identify the manifestations of intent, as they existed at the time of contracting … Nothing on the face of the documents indicate that … the Regents' interpretation should override the contracting parties' agreed interpretation. Instead, the

manifestations indicate that the parties intended to divide the field of use rights such that each party had an exclusive license.”).

As between WRF and NeuroGrafix, the intention of the parties to the Amended Agreement is clear – that NeuroGrafix would receive the sole right to practice and enforce the ‘360 Patent, while WRF retained no role other than the right to receive a portion of any revenues generated from such enforcement activities. Since a stated purpose of the Amended Agreement is “to remove WRF as a necessary party to actions where Licensee asserts the Patent Rights against Third Party infringers,” the only reasonable interpretation of the Amended Agreement that gives effect to the intent of the parties is that NeuroGrafix, in addition to exclusive rights to make, use, and sell, also obtained exclusive rights to offer for sale and import under the ‘360 Patent. Therefore, Plaintiffs do have constitutional standing to sue for acts of offering to sell or importing that infringe the ‘360 Patent.

**C. Plaintiffs Have Constitutional Standing To Bring Claims For Infringement Of NIMA’s And IBSC’s Respective Fields Of Use.**

Defendant relies on *Morrow v. Microsoft Corp.*, 499 F.3d 1332, 1342-1343 (Fed. Cir. 2007) in support of its remarkable argument that Plaintiffs lack constitutional standing to sue for infringement of the ‘360 Patent in NIMA’s and IBSC’s respective fields of use. In *Morrow*, the court held that a party with a contractual right to sue for infringement, GUCLT, lacked constitutional standing to do so, because it did not hold any exclusive patent rights, only a future beneficial interest in 45% of the remaining assets of a different party, AHLT, which did hold exclusive patent rights, but was only a third-party defendant, not a co-plaintiff, in the action. *Morrow*, 499 F.3d at 1342-1343. The facts of *Morrow* are wholly inapposite to the instant action. The Central District of California has already held that the three Plaintiffs in this action, NeuroGrafix, NIMA, and IBSC, each have constitutional standing to sue for infringement of the

'360 Patent within their respective exclusive fields of use. *NeuroGrafix v. Regents of the Univ. of Cal.*, 2012 U.S. Dist. LEXIS 15170 (C.D. Cal. Jan. 4, 2012). Defendant's statement that NeuroGrafix does not have constitutional standing to bring claims for infringement of the '360 Patent in NIMA's or IBSC's respective exclusive fields of use is simply irrelevant. The provision in the agreements among the Plaintiffs cited by Defendant stating that "[NeuroGrafix] has the exclusive right to sue for any infringement by Third Parties. [NIMA/IBSC] will assist [NeuroGrafix], at [NeuroGrafix]'s request and expense, in pursuing such action" simply means that neither NIMA nor ISBC has the contractual right to *initiate* patent litigation. Ex. N, § 6.2; Ex. O, § 6.2. This provision does not mean that NIMA and IBSC do not have the right to *participate* in patent litigation instituted by NeuroGrafix; indeed, this provision expressly contemplates such participation by requiring NIMA and IBSC to "assist" NeuroGrafix "in pursuing such action[s]."*Id.* Thus, claims for infringement in NIMA's field of use should not be dismissed because Plaintiff NIMA has constitutional standing to bring those claims, claims for infringement in IBSC's field of use should not be dismissed because Plaintiff IBSC has constitutional standing to bring those claims, and the participation of NIMA and IBSC as Plaintiffs in the instant litigation is entirely consistent with the agreements among the Plaintiffs.

## III. PLAINTIFFS HAVE PROPERLY PLED DIRECT PATENT INFRINGEMENT

### A. The Amended Complaint Satisfies the Pleading Requirements of Form 18 And Does Not Raise A Joint Infringement Claim.

A claim for direct infringement of a patent is adequately plead if it satisfies the requirements of Form 18. *R+L Carriers, Inc. v. DriverTech LLC (In re Bill of Lading Transmission & Processing Sys. Patent Litig.)*, 681 F.3d 1323, 1334 (Fed. Cir. 2012) (holding that Form 18 still controls even after *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009)). "Form 18 requires:(1) an allegation of jurisdiction; (2) a

statement that the plaintiff owns the patent; (3) a statement that defendant has been infringing the patent 'by making, selling, and using [the device] embodying the patent'; (4) a statement that the plaintiff has given the defendant notice of its infringement; and (5) a demand for an injunction and damages." *Id*. at 1334.

Here, the requirements of Form 18 have been met by the Amended Complaint: (1) ¶¶ 12-13 contain an allegation of jurisdiction; (2) ¶¶ 14-17 contain statements explaining Plaintiffs' exclusive licensee status under the '360 Patent; (3) ¶ 20 contains a statement that "Defendants have been … infringing … the '360 Patent by making, using, selling, offering to sell, or importing, without license or authority, products and services that include, without limitation, the performance of DTI and diffusion anisotropy based tractography."; (4) the requirement set forth in Form 18 regarding patent notice concerns marking products with patents and is inapplicable to the method claims of the '360 Patent (*Bandag, Inc. v. Gerrard Tire Co.*, 704 F.2d 1578, 1581 (Fed. Cir. 1983)); in addition, with regards to the system claims of the '360 Patent, Plaintiffs do not sell any systems that could be marked; moreover, it is undisputed that Defendant has had notice of its infringement of the '360 Patent at least since the filing of the original complaint in this action; and (5) the Prayer for Relief includes a request for an injunction (¶ 2) and damages (¶ 3).

Ignoring Plaintiffs' compliance with the requirements of Form 18, Defendant seeks to inject a joint infringement analysis into the pleading stage of the case, before any required identification of the asserted claims, before any discovery has taken place, and before the claim language has been construed. Defendant's position is premature, unsupported, and based on mischaracterizations of the actual claim language. Plaintiffs have accused each of the Defendants

of directly infringing for, among other things, using and selling products and services that infringe the '360 Patent. Joint infringement has not been pled, nor need it have been.

Defendant's assumption that the claims require joint infringement is premature and unsupported. The claims do not on their face require joint infringement. Defendant's arguments to the contrary rely on their proposed construction of a single patent claim, but the determination of the scope of the claims is an issue for claim construction, not a motion to dismiss. *See O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*, 521 F.3d. 1351, 1360 (Fed. Cir. 2008) ("The purpose of claim construction is to 'determin[e] the meaning and scope of the patent claims asserted to be infringed.'"); *Fujitsu Ltd. v. Belkin Int'l, Inc.*, 2011U.S. Dist. LEXIS 34076, at *57 (N.D. Cal. Mar. 29, 2011) ("A motion to dismiss is not the proper time to initiate claim construction."). Indeed, as recognized by the court in *Fujitsu*, "[i]f the Court were to construe the [patent claims] at the motion to dismiss stage, it would be starting the process of evaluating the merits of Fujitsu's case." 2011 U.S. Dist. LEXIS 34076, at *57.

Moreover, even if Defendant is correct that the representative method patent claim mentioned in the Complaint requires joint infringement, claims 54-66 of the '360 Patent are apparatus/system claims, and joint infringement analysis is simply irrelevant for such claims. *Centillion Data Sys., LLC v. Qwest Communs. Int'l*, 631 F.3d 1279, 1286 (Fed. Cir. 2011) (where different elements of the accused system were divided between a service provider and its customers, only the party that put the claimed system as a whole into service and received the benefit from this service, i.e. the customer, could be considered the "user" of the system and the sole direct infringer; joint (direct) infringement did not apply to the service provider since it never put into service the portion of the accused system controlled by its customers, and

supplying other elements of the accused system for the customer to use is not the same as using the system).

If it is Defendant's contention that Plaintiffs' claims are limited to the single patent claim identified in the Complaint, or that Plaintiffs must identify all asserted patent claims in the Complaint, they are wrong. Plaintiffs are under no obligation to identify or assert all claims at the pleading stage. Under the default rules in effect in this district, Plaintiffs are not due to identify the claims being asserted in this action or the accused product(s) or method(s) until 30 days after the Rule 16 Case Management Conference, which has not yet occurred. *See* District of Massachusetts L.R. 16.6 Appendix, Sample Scheduling Order for Patent Infringement Cases.

Defendant's suggestion that *Desenberg v. Google, Inc.*, 2009 U.S. Dist. LEXIS 66122(S.D.N.Y. July 30, 2009), supports its attempt to inject its joint infringement analysis into the pleading stage is mistaken. *Desenberg* involved a claim where it was undisputed that the claim required the participation of multiple parties. *Id*. at *19-*20. Defendant's citations of *Desenberg* and other cases regarding purported pleading requirements for joint infringement claims are simply inapposite, for the simple reason that infringement of patent claims *requiring the participation of multiple parties* have not been asserted in the instant action, despite Defendant's mischaracterizations to the contrary. Since no joint infringement issue currently exists in this action, and as the Amended Complaint contains all the elements required by Form 18, which Defendant notably does not dispute, Defendant's Motion to Dismiss is fatally flawed and should be denied.

**B. Discovery In This Case Should Not Initially Be Limited To The Issue Of Plaintiffs' Standing.**

Plaintiffs have already responded to all of Defendant's informal discovery requests to date regarding standing issues. Defendant has more than sufficient evidence, as described above,

to demonstrate that Plaintiffs have standing to bring this action. The fact that Defendant speculates (without basis) that further standing issues exist does not justifying staying all discovery expect standing discovery. Defendant is free to serve standing discovery and, if they believe it is an issue, to diligently take the discovery they need. It is not, however, efficient to stage discovery as Defendant proposes. As a result, Defendant's request should be denied.

## IV. CONCLUSION

For the foregoing reasons, Defendant's Motion to Dismiss should be DENIED. To the extent that the Court finds any of Defendant's bases to be persuasive, however, Plaintiffs should be granted leave to amend to address the issues raised by the Court.

Respectfully submitted,

Dated: September 26, 2012

NEUROGRAFIX, NEUROGRAPHY INSTITUTE MEDICAL ASSOCIATES, INC., and IMAGE-BASED SURGICENTER CORPORATION,

By their attorneys,

*<u>/s/ David S. Godkin</u>*
David S. Godkin (BBO#196530)
Anne Marie Longobucco (BBO#649299)
Birnbaum & Godkin, LLP
280 Summer Street
Boston, MA 02210
617-307-6100
godkin@birnbaumgodkin.com
longobucco@birnbaumgodkin.com

Marc A. Fenster (*Pro Hac Vice)*
Andrew D. Weiss (*Pro Hac Vice)*
Fredricka Ung *(Pro Hac Vice)*
Russ August & Kabat
12424 Wilshire Boulevard, 12th Floor
Los Angeles CA 90025
310-826-7474
mfenster@raklaw.com
aweiss@raklaw.com
fung@raklaw.com

**CERTIFICATE OF SERVICE**

I, David S. Godkin, hereby certify that a true and correct copy of the foregoing document was delivered to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent those indicated as non-registered participants on September 26, 2012.

*/s/ David S. Godkin*
David S. Godkin